**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MANUEL GONZALEZ, LEOPOLDO RUIZ,
CARLOS ACOSTA, HERMAN RUIZ, JOSE
B. HERNANDEZ, JUAN CORTEZ, LEONEL
ANZUETO, WILLIAM ANZUETO, and
LEONEL ANZUETO GARCIA,

                        Plaintiffs,

           - against -

TREES R US INC. and TRACEY RECENELLO,

                      Defendants.
--------------------------------------------------------X

**MEMORANDUM**
**& ORDER**

CV 14-7487 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     PRELIMINARY STATEMENT

      This action was brought by Plaintiffs Manuel Gonzalez, Leopoldo Ruiz, Carlos Acosta,

Herman Ruiz, Jose B. Hernandez, Juan Cortez, Leonel Anzueto, William Anzueto, and Leonel

Anzueto Garcia (collectively, "Plaintiffs") against Defendants Trees R Us Inc. and Tracey

Recenello  (collectively, "Defendants") under the Fair Labor Standards Act ("FLSA") and New

York Labor Law ("NYLL").  *See generally* Plaintiffs' Amended Complaint ("Am. Compl.")

[DE 29].  Plaintiffs claim, among other things, that Defendants failed to pay them overtime and

minimum wages.[1]  *See id.*

---

[1]  A related action was subsequently filed by three other employees against the same
Defendants under civil action number CV 16-3162.  Although that action was mediated and
settled together with the instant action, the two lawsuits were settled under some slightly
differing terms.  The fee dispute which this decision addresses, however, relates only to the
settlement reached in this case, CV 14-7487.

In February 2019, counsel filed a proposed settlement agreement for approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). *See* Proposed Settlement Agreement (the "Agreement") [DE 92]. The Agreement provides for $311,764.00 in compensation to the Plaintiffs along with attorneys' fees in the amount of $101,458.00. The attorneys' fees are equivalent to one-third of the settlement amount, less expenses. *See id*.

Since the filing of the Agreement, a fee dispute has emerged between Plaintiffs' initial counsel, Neil H. Greenberg & Associates, P.C. ("the Greenberg firm"), who commenced the action and represented Plaintiffs through March 2018, and Plaintiffs' subsequent and current counsel of record, Helen F. Dalton & Associates, P.C. ("the Dalton firm"). In an Order dated March 21, 2019, the Court in its discretion ordered that it would exercise supplemental jurisdiction to hear the fee dispute at issue here. *See* DE 94. The Clerk of the Court was directed to designate Neil H. Greenberg & Associates, P.C. as an "Interested Party" in this case. *Id*. The Greenberg firm has been permitted to appear in this action as an interested party and has filed a motion to fix and enforce a charging lien on the settlement funds for what it claims are its fees for legal services provided to the Plaintiffs. *See generally* Greenberg Firm's Memorandum in Support of its Motion for Attorneys' Fees ("Greenberg Mem.") [DE 98-1]; Greenberg Firm's Reply Declaration ("Greenberg Reply") [DE 99].

The Dalton Firm opposes the motion, notwithstanding its representation in connection with the proposed Agreement that: (1) the requested $101,458.00 in attorneys' fees "will be split between Helen F. Dalton & Associates, P.C. and Neil H Greenberg & Associates, P.C.," Agreement at 2; and (2) "Plaintiffs' current and prior attorneys have vigorously litigated this matter." *Id*. at 3. In particular, the Dalton firm "requests that the attorneys' fees awarded to the Greenberg firm [be] nominal and limited to 5-10% of the total attorneys' fees award." The

2

Dalton Firm's Memorandum in Opposition to the Greenberg Firm's Motion ("Dalton Opp'n.") [DE 100].

 For the reasons which follow, the Greenberg firm's motion is GRANTED to the extent set forth in this Memorandum and Order.

## II.    BACKGROUND

### A.    Relevant Procedural Background

The Court begins with a review of the relevant procedural background of this action.  The Greenberg firm filed the initial Complaint in this case on behalf of the Plaintiffs on December 23, 2014.  *See* DE 1.  Judge Feuerstein saw counsel for the parties for an initial conference on May 6, 2015.  *See* DE 22.  Subsequent status conferences were held on July 16, 2015 and September 29, 2015.  *See* DE 24, 25.  At the conclusion of the September 29, 2015 conference, Judge Feuerstein referred all outstanding discovery to this Court.  *See* DE 25.  Both sides then appeared before this Court on October 7, 2015, at which time a discovery schedule was put in place in accordance with Judge Feuerstein's discovery deadline.  *See* DE 26.  Pursuant to a stipulation executed by counsel for all parties, the Greenberg firm filed the operative pleading – the Amended Complaint – on behalf of Plaintiffs on November 16, 2015.  *See* DE 29.

On November 18, 2015, counsel participated in a Telephone Status Conference with the Court which had been scheduled at the previous October 7, 2015 conference.  During this call, counsel jointly represented that (1) they had participated in two mediation sessions, (2) settlement was still a possibility pending an exchange of certain financial documents, (3) discovery was proceeding on schedule, and (4) there were no outstanding discovery disputes. *See* DE 32.

3

Four months later, in March 2016, the parties consented to this Court's jurisdiction for all purposes and the case was formally reassigned to this Court for all further proceedings. *See* DE 45. The Court then saw counsel for an in-person Status Conference on June 7, 2016, at which time counsel advised the Court that both sides wished to proceed with private mediation. The Court granted the parties' request and directed that the mediation be concluded no later than August 26, 2016. *See* DE 49. There is no indication in the docket that the parties proceeded with private mediation at that time.

On July 6, 2016, Helen F. Dalton & Associates, P.C., filed a notice of appearance with a letter stating as follows: "Plaintiffs . . . have executed consent to change attorney forms with this office, and outgoing Plaintiffs' attorneys have been notified to stop working on their behalf. Outgoing Plaintiffs' attorneys are in the process of transferring their file to this office." DE 51. On July 7, 2016, the Court advised the Dalton firm as purported incoming counsel that no further filings from the Dalton firm were to be made until a formal consent to change attorney form was executed and filed. *See* July 7, 2016 Electronic Order. For approximately 20 months thereafter, there were no docket entries. It was not until March 6, 2018 that the Dalton Firm filed a proper substitution of counsel, *see* DE 54-1, along with a letter request for a status conference. *See* DE 55. On March 12, 2018, the Court authorized the Dalton firm's substitution as counsel of record for the Plaintiffs in place of the Greenberg firm and scheduled a Status Conference for April 3, 2018. *See* April 12, 2018 Electronic Order.

On April 3, 2018, the Court saw counsel for the parties, at which time Defendants' counsel requested, based on the Consent which had been implemented, that the Court refer the case to another Magistrate Judge to conduct a settlement conference. *See* DE 57, 64. Magistrate Judge Anne Shields conducted a settlement conference on May 15, 2018. *See* April 30, 2018

Electronic Order.  On May 18, 2018, counsel filed a letter advising this Court that no settlement had been reached.  *See* DE 63.  In light of the parties' inability to settle the matter, the Court saw counsel for another Status Conference on June 25, 2018.  The Court spent the conference addressing the numerous depositions which remained to be completed prior to trial.  *See* DE 82.  A subsequent Status Conference was held on October 3, 2018, at which time the Court set further deadlines and issued further directives with respect to depositions.  *See* DE 90.

ADR Administrator Robyn Weinstein entered a notice on the electronic docket on October 23, 2018 that a mediator had been selected and the first mediation session was scheduled for November 5, 2018.  *See* Electronic Docket Entry dated October 23, 2018.  Thereafter, on November 5, 2018, counsel informed the Court that the parties' November 2, 2018 mediation had been successful.  Counsel requested 30 days to finalize their settlement agreement.  *See* DE 89.  The Court granted that request.  Following several extensions of the time period within which to submit their settlement agreement for approval, counsel finally submitted the Agreement for *Cheeks* review on February 27, 2019.  *See* DE 92.  Of the total settlement amount of $311,764, the Agreement provides for attorneys' fees in the sum of $101,458.00 – one third of the overall settlement amount. *See id.*

Shortly after the filing of the Agreement, the Court received a fax from the Greenberg firm requesting that it "be permitted to become an interested party with access to ECF filing" so that the Greenberg firm could state its position with respect to a fee dispute that had arisen between the Greenberg firm and the Dalton firm.  In an Order dated March 21, 2019, the Court explained that, in its discretion, it was exercising supplemental jurisdiction over the fee dispute.   The Clerk of the Court was directed to designate the Greenberg firm as an interested party in the case.  *See* DE 94.  On March 26, 2019, the Court approved a briefing schedule for the Greenberg firm's

anticipated motion for attorneys' fees, *see* DE 96, and the parties' papers in connection with the motion were subsequently filed on ECF.  *See* DE 98-100.

### B.       The Arguments of the Parties

#### 1.       *The Greenberg Firm's Motion for Attorneys' Fees*

The Greenberg firm argues that it is entitled to enforcement of a charging lien on the settlement amount for attorneys' fees based on a contingency fee arrangement it had with the Plaintiffs.  Because the Greenberg firm surrendered its retaining lien when it turned over the case file to the Dalton firm, the Greenberg firm argues that it obtained a contractual lien for prior legal services rendered in the action to be determined at the conclusion of the case.  *See* the Greenberg firm's Mem. at 6.  To satisfy this lien, the Greenberg firm states that under existing law, it is given the right as outgoing counsel to elect whether it will take compensation on the basis of a fixed dollar amount, or, in the alternative, on a contingency fee basis.  *Id*. at 5.  "As NHG has clearly elected a charging lien on a contingent percentage basis to be determined at the conclusion of the case," the Greenberg firm asks that the Court "fix and enforce such a lien based upon the proportionate share of the work it performed" in the case.  *Id*. at 6.

According to its motion, the Greenberg firm took Plaintiffs' case on a one-third contingency fee basis, and subsequently covered all of Plaintiffs' expenses (totally $5,360.00) during its representation.  *See id*. at 2-3.  With respect to pre-trial work, the Greenberg firm states that it:  drafted and filed the Complaint, prepared damages computations; served discovery demands for Plaintiffs and prepared discovery responses to the Defendants; collected documents from Plaintiffs; served several deposition notices; and appeared in Court on behalf of Plaintiffs several times.  *See id*. at 3-4.   The Greenberg firm asserts that it also "prepared for and attended two full day mediations with private mediator Ralph Berger.  At the mediations, NHG was able

to secure a $500,000.00 offer of settlement for Plaintiffs payable over five years.  Plaintiffs rejected this offer.  Thereafter, NHG was able to secure a lump sum settlement offer of $300,00 for Plaintiffs.  Plaintiffs, however, rejected this offer as well." *Id*. at 3.   On the basis of this work, the Greenberg firm seeks a charging lien in the amount of 75% of the one-third contingency fee for attorneys' fees awarded in this matter as provided in the Agreement.  *See* the Greenberg firm's Reply ¶ 7.

In the alternative, if the Court is unwilling to enforce a charging lien in the amount of 75% of the total attorneys' fees, the Greenberg firm asks that the Court fix and enforce a charging lien using the lodestar method.  Under this scenario, the Greenberg firm seeks compensation as follows:  156.9 hours billed at a rate of $300 per hour (for attorney Justin Reilly); 19.9 hours billed at a rate of $375 per hour (for attorney Neil Greenberg), and 20.5 hours billed at a rate of $225 per hour (for associate attorney Heather Babione), for a total attorneys' fee award of $59,145.00.  *See* the Greenberg firm's Mem. at 8.

## 2.      *The Dalton Firm's Opposition*

In opposing the Greenberg firm's request for attorneys' fees, the Dalton firm advances several arguments.  First,  the Dalton firm contends that the 197.3 hours purportedly billed by the Greenberg firm during the approximately one year the Greenberg firm had the case is unreasonable in light of the fact that the Greenberg firm did not take any depositions, as well as the fact that neither of the two mediation sessions attended by the Greenberg firm were fruitful. *See* Dalton Firm Opp'n. at 3.  In this vein, the Dalton firm further alleges that Plaintiffs replaced the Greenberg firm because they felt the Greenberg firm was neglecting their case and was failing to return communications.  *See id*. at 4.  Moreover, the Dalton firm contends that the affidavits of the Plaintiffs show that several entries in the Greenberg firm's billing records are

inaccurate and indicative of overbilling and block billing.[2]  *See id.*  In contrast to what it sees as the Greenberg firm's inaccurate and unreasonable billing in light of the work performed, the Dalton firm claims that it has billed 312.8 hours on this matter, comprised of 245 unique billing entries reflecting effective advocacy from discovery through settlement and entitling the Dalton firm to most if not all of the designated fee award of $101,458.00.  *See id.* at 5-7.

The Dalton firm also takes aim at the Greenberg firm's claim that it secured two settlement offers for Plaintiffs – one for $500,000.00 and one for $300,000.00.   In affidavits of several of the Plaintiffs filed with its opposition papers, the Dalton firm asserts that "at least three of the Plaintiffs in this matter not only did not reject an offer of $500,000.00 over five years, but were unaware of any offer of $500,000.00."  Dalton Opp'n. at 7.  "As such, HFD's position is that Plaintiffs were never offered an offer superior to the offer accepted by Plaintiffs on November 2, 2018" and "the Court should not be inclined to award NHG any additional attorneys' fees as the results obtained by HFD were greater than any potential results obtained by NHG."  *Id*. at 8.

Finally, the Dalton firm contends that if the Court declines to award it attorneys' fees based on the one-third contingency fee, the Dalton firm is entitled to an award under the lodestar method, totaling $82,940.00.  This number breaks down as follows:  168.1 hours billed at a rate of $375 per hour (for attorney Roman Avshalumov); 64.9 hours billed at a rate of $200 per hour (for attorney O'Donnell); and 77.3 hours of paralegal service billed at a rate of $75.00 per hour. *See* Dalton Opp'n. at 9-10.

---

[2]   The Greenberg firm disputes the allegations contained in the Plaintiffs' affidavits.  A number of the assertions made in those affidavits are challenged by the declaration of Catalina Roman which purports to provide further evidence as to the accuracy of the contested billing entry.  *See* Roman Decl. ¶ 7.

### 3.    *The Greenberg Firm's Reply*

The  Greenberg firm makes the following additional arguments in response to the Dalton firm's opposition papers:  (i) notwithstanding  the Dalton firm's assertions, the Greenberg firm was not relieved as counsel for cause; (ii) despite receiving the case file from the Greenberg firm in July 2016, the Dalton firm did not file its consent to change attorney form on the docket until March 6, 2018, and no substantive work in the matter was performed until depositions of three Plaintiffs were conducted in October 2018; (iii) while the Dalton firm supposedly spent numerous hours "[d]rafting motions for class action" and preparing "affidavits for class action," the Amended Complaint previously filed by the Greenberg firm dropped the class claims; and (iv) neither of attorneys Roman Avshalumov or James O'Donnell have submitted sworn declarations detailing their professional experience in support of their request for a fee award. *See* Greenberg Reply ¶¶ 3-6.

The Greenberg firm also submits the declaration of Catalina Roman in support of its motion.  Ms. Roman states that she has worked at the Greenberg firm as a paralegal/bookkeeper since 2010 and that she is fluent in both Spanish and English.  *See* Declaration of Catalina Roman in Support of the Greenberg Firm's Motion for Attorneys' Fees ("Roman Decl.") [DE 99-1], ¶¶  3-4.  According to her sworn statement, Ms. Roman has been "translating for NHG Spanish speaking clients" since she began her employment at the firm.  *Id*. ¶ 5.  She was the "bilingual paralegal that worked on the Gonzalez matter from the beginning of the case until the Plaintiffs hired other attorneys."  *Id*. ¶ 6.   Significantly, Ms. Roman states that on the day before Thanksgiving in November 2014, she spent the entire day at the Greenberg firm translating for many opt-ins who came in at different times during the day.  She spent at least eight hours in meetings with approximately seven (7) Plaintiffs.  *Id*. ¶ 7.

With respect to what information was conveyed to the Plaintiffs about settlement while they were represented by the Greenberg firm, Ms. Roman states the following:

8.  I was also the translator at a mediation in this case which took place in Garden City at Defendants' counsel's office.  Several Plaintiffs attended the mediation, including Manuel Gonzalez, Carlos Acosta and Juan Cortez.  I remember the Plaintiffs being upset with the Defendants because Tracey Recenello and his wife called them a derogatory name in the waiting room.

9.  I also recall conveying to Plaintiffs that Defendants had offered $500,000 payable over a 5 year period.  The Plaintiffs flat out rejected this offer.

10.  Throughout the time that NHG represented the Plaintiffs, I often spoke to various Plaintiffs over the phone.  Several of the Plaintiffs also routinely came to NHG's office to discuss their case.  This was because there were two offers of settlement on the table.  One was for $500,000 payable over 5 years and the other was for $300,000 payable all at once.  All of the Plaintiffs, even the one that was living in Mexico at the time, rejected these offers.

*Id.* ¶¶ 8-10.  Clearly, there is an obvious disparity between the Roman Declaration and the Plaintiffs' declarations that the Greenberg firm did not successfully procure two settlement offers.

## III.   DISCUSSION

### A.   Legal Principles

"Under New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services."  *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010) (citing N.Y. JUD. LAW § 475).  "A charging lien is a security interest in the favorable result of litigation, giving the attorney equitable ownership interest in the client's cause of action . . . ."  *Antonmarchi v. Consol. Edison Co. of N.Y.*, 678 F. Supp. 2d 235, 240 (S.D.N.Y. 2010) (quoting *Chadbourne & Parke, LLP v. AB Recur Finans*, 794 N.Y.S.2d 349, 350 (1st Dep't 2005)).  It is well settled, however, that a charging lien is forfeited if an attorney withdraws or is discharged

for cause. *Antonmarchi*, 678 f. Supp. 2d at 241; *Petition of Harley & Browne*, 957 F. Supp. 44, 48 (S.D.N.Y. 1997).

The Greenberg firm seeks attorneys' fees pursuant to a charging lien predicated upon Section 475 of the New York Judiciary Law.  Section 475 of the New York Judiciary Law is the statutory provision which establishes a discharged attorney's enforceable charging lien.  Section 475 provides as follows:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. JUD. LAW § 475.  As the Second Circuit has held, "the lien created by section 475, which attaches by its terms in an action or proceeding 'in any court or before any . . . federal department,' is enforceable in federal courts in accordance with its interpretation by New York courts." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir. 1991).  Significantly, the Court observes that Section 475 "is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 450 (2d Cir. 1998) (quoting *Fischer-Hansen v. Brooklyn Heights R.R.*, 173 N.Y. 492, 499 (1903)).  Especially relevant here, the charging lien set forth in Section 475 is equally enforceable against settlement funds as well as monetary awards resulting from a favorable judicial disposition. *See Ie v. Ageha Japanese Fusion, Inc.*, No. 15-CV-63, 2018 WL 1635029, at *2 (S.D.N.Y. Apr. 2, 2018), *reconsideration denied*, No. 15-CV-63, 2018 WL

11

4935785 (S.D.N.Y. Oct. 11, 2018).  Similarly relevant, a charging lien pursuant to Section 475 "is not disturbed by an order of substitution . . . between the parties."  *Paolillo v. Am. Exp. Isbrandtsen Lines, Inc.*, 305 F. Supp. 250, 251 (S.D.N.Y. 1969).

The existence or non-existence of an enforceable charging lien is only half of the inquiry; the next question concerns the appropriate method of determining the amount of the lien.  As a general matter, "[t]he theory of *quantum meruit,* rather than the retainer agreement, is the basis for determining the amount at which to fix the charging lien."  *Stair*, 722 F. Supp. 2d at 268. Under the theory of *quantum meruit*, an attorney discharged without cause has the right to recover the "fair and reasonable value of the services rendered."  *Id*.; *Ageha Japanese Fusion, Inc.*, 2018 WL 1635029, at *3 ("The amount of a charging lien granted under § 475 is to be determined by the 'reasonable value of the services' provided."); *Skylon Corp. v. Greenberg*, 164 F.3d 619 (2d Cir. 1998) (summary order) (same).  In the context of *quantum meruit*, "[a]lthough a court is not bound by the parties' retainer agreement, it may still use such agreement as guidance in determining the reasonable value of the services provided."  *Stair*, 722 F. Supp. 2d at 268-69.

Where, however, a fee dispute arises between former and subsequent counsel, as is the case here, rather than between counsel and client, "the rules are somewhat different.  The discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case.  That right can only be limited by waiver or operation of law."  *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (1993) (internal citation omitted).  This 1993 New York Court of Appeals' decision – *Cohen v. Grainger, Tesoriero & Bell* – first established the applicable rule with respect to determinations of the amount of a charging lien in the context

of fee disputes between successive counsel.  The Second Circuit has affirmed that *Cohen*

remains "the proper authority to guide decisions in disputes between lawyers or sets of lawyers."

*Hervochon v. Iona Coll.*, No. 14 CIV. 06017, 2019 WL 2451295, at *2 (S.D.N.Y. Jan. 18, 2019)

(quoting *Budin, Reisman, Kupferberg & Bernstein, LLP. v. Law Offices of Rosemarie Arnold*, 79

Fed. App'x 460, 461 (2d Cir. 2003) (summary order), *report and recommendation adopted*, No.

14-CV-6017, 2019 WL 1375359 (S.D.N.Y. Mar. 27, 2019).  In *Cohen*, the Court of Appeals

stated as follows with respect to the proper method of calculating an attorney's charging lien in a

fee dispute between counsel:

> While no New York case has specifically ruled on the subject, we
> have held that an outgoing attorney's assertion to an incoming
> attorney that the fee "would be 'determined at the conclusion of the
> litigation'" should be construed to mean that the outgoing attorney
> was opting to have the fee measured by a percentage of the recovery
> (*Cheng, supra,* at 459, 541 N.Y.S.2d 742, 539 N.E.2d 570). While
> *Cheng* dealt with what type of election was made by the discharged
> attorney, it lends support to the idea that an attorney's decision to put
> off payment is inconsistent with a demand for quantum meruit.
> Indeed, other cases have held that when a notice of substitution is
> involved, the discharged attorney should be compelled either to elect
> quantum meruit at the time of departure or to accept a contingent fee
> computed as a percentage of the recovery at the conclusion of the
> case (*see, Podbielski v. Conrad,* 286 App. Div. 1040, 1041, 145
> N.Y.S.2d 321).
>
> This presumption, that a contingent fee is desired if no election is
> made, follows logically. As a practical matter, quantum meruit
> valuation of services rendered by a discharged attorney can best be
> determined at the time of discharge, rather than some months or
> years later when the case finally ends, whereas the calculation of a
> contingent percentage fee is better left to the conclusion of the
> litigation "when the amount of the recovery and the relative
> contributions of the lawyers to it can be ascertained" (*Cheng, supra,*
> 73 N.Y.2d at 459, 541 N.Y.S.2d 742, 539 N.E.2d 570). The
> presumption would also avoid the imposition of a quantum meruit
> fee if the litigation was unsuccessful.
>
> Rather than adopt a hard and fast rule, we leave the determination
> of fees in these cases to the election of the departing attorney, as

> demonstrated by his or her conduct.  Where an election is not made
> or sought at the time of discharge, the presumption should be that a
> contingent fee has been chosen.

*Cohen*, 81 N.Y.2d at 659-60.

### B. Application to the Facts

In light of the legal principles discussed above, the Court comes to several readily ascertainable conclusions.  First, it cannot seriously be disputed that the Greenberg firm possesses a charging lien on the settlement funds and has a concomitant right to enforcement of that lien.  While it is unclear if the Dalton firm is contending that the Greenberg firm was discharged for cause, such a finding is not warranted based upon the limited record before the Court.  To the contrary, the Dalton firm has represented to the Court in language of the Agreement itself that the Greenberg firm "vigorously litigated this matter" while the Greenberg firm was counsel of record.  Agreement at 3.  Plaintiffs' current counsel cannot have it both ways.  Therefore, because the Greenberg firm was not discharged for cause, it retains an enforceable charging lien pursuant to Section 475 of the New York Judiciary Law.

Next, in light of the New York Court of Appeals' decision in *Cohen*, the Court finds that the determination of the amount of the Greenberg firm's charging lien should be based on a contingency-fee basis rather than on the basis of *quantum meruit*.  At the time of the Dalton firm's substitution for the Greenberg firm, both counsel stipulated that "[a]t the conclusion of the case [HFD] will hold the entire legal fee in escrow and will not be distributed until the fee matter is resolved.  If the parties cannot agree on the distribution of the legal fee, [NHG] will submit the necessary motion to [the] Eastern District of New York for resolution."  DE 98-3.  It is therefore clear that the Greenberg firm made no election at the time of its discharge as to how its fee was to be calculated, explicitly reserving such a determination until the conclusion of the litigation.

14

"Where an election is not made or sought at the time of discharge, the presumption should be that a contingent fee has been chosen." *Cohen*, 81 N.Y.2d at 660.  Moreover, this is the method of calculation for which the Greenberg firm advocates in the instant motion.  *See* the Greenberg Mem. at 4-6; *Smerda v. City of New York*, 7 A.D.3d 511, 512 (2004) ("[B]ecause the fee dispute is between attorneys, [counsel] had the option, as he seeks here, of receiving a contingent percentage fee based upon the proportionate share of the work he performed on the whole case.").  As a result, the Court will fix the Greenberg firm's charging lien as a portion of the Agreement's $101,458.00 one-third contingency fee, rather than on the basis of the "fair and reasonable value of the services rendered" by the Greenberg firm.  *Stair*, 722 F. Supp. 2d at 268.

The Court must now determine how the Agreement's one-third contingency fee should be apportioned between the Dalton firm and the Greenberg firm.  "In determining the contingent fee award for a former attorney, courts base the award on his or her proportionate share of the work performed on the whole case."  *Hervochon*, 2019 WL 2451295, at *3 (internal quotation marks omitted) (quoting *Cruz v. Olympia Trails Bus Co.*, No. 99 CIV. 10861, 2005 WL 3071473, at *2 (S.D.N.Y. Nov. 14, 2005)).  "In assessing each firm's proportionate contribution, [the court should] focus on [1] the time and labor spent by each, [2] the actual work performed, [3] the difficulty of the questions involved, [4] the skills required to handle the matter, [5] the attorney's skills and experience, and [6] the effectiveness of counsel in bringing the matter to resolution." *Foppiano v. City of New York*, No. 00 CIV. 7968, 2002 WL 31202716, at *4 (S.D.N.Y. Sept. 25, 2002) (quoting *Buchta v. Union–Endicott Centr. Sch. Dist.,* 745 N.Y.S.2d 143, 145 (3d Dep't 2002)).  The Court is mindful that "'[t]here is no formula or bright-line rule that can be applied' in '[q]uantifying the respective contributions' of the discharged and new attorneys." *Hervochon*, 2019 WL 2451295, at *3 (quoting *Cruz*, 2005 WL 3071473, at *5).

Applying the six factors identified above in apportioning the contingency fee, the Court finds that factors (3), (4), and (5) – respectively, the difficulty of the issues in the case, the skills required by case, and the skills possessed by the attorneys – are a draw as to both firms.  The Court does not find any significant divergence between the two firms with respect to skills possessed by the attorneys nor the skills required by the case.  Likewise, this case does not appear to have presented any unique or difficult legal questions; rather, this was a typical FLSA/NYLL action.  The absence of any real motion practice underscores this point.  Nor does the case appear to have required skills beyond those an experienced employment law litigator would possess.

Factors (2) and (6) similarly fail to weigh strongly in either firm's favor.  As to factor (2) – the actual work performed – the Greenberg firm commenced this collective/class action lawsuit, interviewed the Plaintiffs and gathered necessary information and documents from them, prepared and filed the Complaint, prepared the Rule 26(a) Initial Disclosures, drafted and served discovery demands for ten Plaintiffs as well as the responses to Defendants' discovery demands, prepared and filed an amended complaint at the Plaintiffs' request and made several court appearances.  The Greenberg firm also prepared for and attended two full-day mediations.  *See* Reilly Decl. ¶¶ 8-11.

It appears that the Dalton firm spent the bulk of its time communicating with the Plaintiffs by phone, email and in person and in attempting to mediate/settle the matter.  *See generally* DE 100-2.  Significantly, the Greenberg firm has stated that it turned over its entire file to the Dalton firm immediately, along with the extensive damages calculations that had been done. Early on, the Dalton firm spent substantial time reviewing the boxes of discovery documents and comparing the Greenberg firm calculations to the record which had been produced.  For

16

example, on October 3 and 4, 2016, the Dalton firm expended 8.2 hours reviewing the discovery, although it is difficult to ascertain who did what since the initials of two attorneys (Attorneys Avshalumov and Donnolly are both listed for the same entries). *See* Dalton Firm Billing Records, annexed as Exhibit B to Dalton Opp'n. The Court points out that at least some of this review had to be duplicative of what prior counsel had already done, although necessary for new counsel to come up-to-speed. The Dalton firm also spent time researching Defendants' financial condition which was an essential consideration given the Defendants' representations. This included retaining a forensic expert. In addition, the Dalton firm also prepared three of the Plaintiffs for their depositions which were taken by video in late October 2018. As to factor (2) then, the Court finds that the scales are not tipped dramatically in favor of either firm.

With respect to factor (6) – counsels' success in bringing about a resolution – the Dalton firm was ultimately successful in bringing the matter to resolution via more than one mediation session which ultimately culminated in the $311,764.00 settlement. However, significant groundwork toward that end had been completed by the Greenberg firm and turned over to the Dalton firm. In addition, the Court cannot ignore the sworn statements of Catalina Roman, who, because of her fluency in Spanish, was intimately involved in communications with the Plaintiffs and in providing information to the Plaintiffs. Her statement that she was present and communicated the two settlement offers procured by counsel on behalf of the Plaintiffs – one for $500,000.00 and one for $300,000.00 – stands in stark contrast with the Plaintiffs' affidavits which reflect virtually identical content across the board. *See* Reilly Decl. ¶ 9; Roman Decl. ¶¶ 9-10. On this record, the Court is not in a position to make a finding as to whose version of the facts here is accurate with respect to prior settlement offers.

At this juncture, the Court turns to factor (1) – the time spent on the case by counsel. The Greenberg firm has presented information showing that it expended a total of 197.3 attorney hours litigating this matter while it was counsel of record for Plaintiffs.  *See* Greenberg Mem. at 8; Reilly Decl. ¶ 29 and Ex. 2.  The Dalton firm maintains that it spent a total of 233 attorney hours litigating this matter while it was counsel of record.  *See* Dalton Opp'n. at 9-10; DE 100-2. The Court points out that the contemporaneous billing records of both firms are far from flawless.   For example, in the Dalton firm's billing records, there are multiple entries with more than one attorney's initials entered for the work done, without any differentiation.  Likewise, there is a fifth column on all the billing records, with a heading "Paralegal."  Dalton Opp'n., Ex. 2.  The designation "P" appears in this column after a number of time entries – entries which already show the initials of the attorney (or sometimes two attorneys) in another column and there is no ability to determine if the paralegal was billing time to that particular task, how much time the paralegal expended, and how that time differentiated from the attorney's recorded time. In addition, the Dalton billing entries show 8.4 hours charged by one attorney between October 20 and October 31, 2018 for work drafting a motion for class action – an avenue that had been abandoned by the Plaintiffs while they were represented by the Greenberg firm and which prompted the filing of the amended complaint – before the Dalton firm ever came into the case.  It is also interesting to note the Dalton firm's criticism of the Greenberg firm for not moving things along faster in the litigation when it took the Dalton firm 21 months from this Court's July 7, 2016 Order directing that the firm file a proper substitution of counsel until it did so in March 2018.

The Greenberg billing statements show certain instances of block billing.  For example, on three consecutive dates (August 5 to August 7, 2015), there are time entries totaling 18.5 hours

for "continued review of additional documents produced by defendants."  April 5, 2019 Reilly

Decl., Ex. 2.  In addition to some block billing, two partners billed for time spent "prepping for"

and "attending" two different mediation sessions, for a total of 39 hours.  As to this first factor,

the Court finds that the distinction between the hours billed as reflected in the two firms' billing

sheets are not especially significant.

In review of the six factors as applied to the facts of this case, the Court finds that neither

the Dalton firm nor the Greenberg firm is entitled to the lion's share of the attorneys' fees.

Rather, the Court's analysis of the factors favors a relatively equitable split of fees.  As such, the

Court finds a 55-45 apportionment of the total attorneys' fees is appropriate, with the Dalton firm

receiving 55% of the fees and the Greenberg firm receiving 45%.  The fact that the Dalton firm

is receiving a 55% apportionment reflects the slightly greater expenditure of time the Dalton firm

committed to the action as well as the additional period of time it will spend in distributing the

installment-based settlement and winding down this case.  The Court finds this arrangement fair

and equitable under the circumstances of this case in light of the six factors discussed above.  *See*

*Sutton v. New York City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations

omitted) ("A charging lien, although originating at common law, is equitable in nature, and the

overriding criterion for determining the amount of a charging lien is that it be 'fair.'").

Lastly, the Court observes that, lest the Dalton firm take the position that a 55-45

apportionment is not appropriate under the circumstances of this case (the Dalton firm's

opposition concludes by requesting that the Court award no fees to the Greenberg firm, or, in the

alternative, "5-10% of the total attorneys' fees award," Dalton Opp'n. at 11), something

approaching an equitable split of the total attorneys' fees appears to be what the Dalton firm

initially contemplated at the time the Agreement was submitted for Court approval.  In particular,

when filing the Agreement, the Dalton firm stated that "[t]he attorneys' fees will be *split* between

Helen F. Dalton & Associates, P.C. and Neil H. Greenberg & Associates, P.C."  -- although no

numbers were designated as to that "split."  Agreement at 2 (emphasis added).  Therefore, in

addition to being fair and equitable under the circumstances of this case, the Court finds a 55-45

split of the $101,458.00 in attorneys' fees to be consistent with the firms' original intentions.

## IV.   CONCLUSION

For the foregoing reasons, the Greenberg firm's motion to fix and enforce a charging lien

for its attorneys' fees in this action is GRANTED.  Specifically, the Greenberg firm is entitled to

45% of the $101,458.00 in attorneys' fees, pursuant to the Agreement's one-third contingency

fee.  The Dalton firm is entitled to the remaining 55% of the contingency fee.   The Court orders

that these respective amounts are awarded as attorneys' fees to the two firms.


                                                    **SO ORDERED.**

Dated: Central Islip, New York
       September 23, 2019


                                                    /s/ A. Kathleen Tomlinson
                                                    A. KATHLEEN TOMLINSON
                                                    U.S. Magistrate Judge